UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 20-mj-02247-CMM

UNITED STATES OF AMERICA

vs.

HECTOR ALEJANDRO CABRERA FUENTES,

Defendant.

_____/

## CRIMINAL COVER SHEET

1. This matter <u>did not</u> originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle).

2. This matter <u>did not</u> originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard).

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

BY: _____
Karen E. Gilbert
Assistant United States Attorney
Florida Bar No. 771007
United States Attorney's Office
99 N. E. 4th Street
Miami, Florida 33132-2111
Telephone: (305) 961-9161
Facsimile: (305) 530-7976
Email: Karen.gilbert@usdoj.gov

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>Hector Alejandro Cabrera Fuentes,<br>*Defendant(s)* | Case No. 20-mj-02247-CMM |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **March 2019 through February 16, 2020** in the county of **Miami-Dade** in the **Southern** District of **Florida**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | Conspiracy to act within the United States as an agent of foreign power without notifying the Attorney General |
| 18 U.S.C. § 951 | Acting within the United States as an agent of a foreign government without notifying the Attorney General |

This criminal complaint is based on these facts:

-SEE ATTACHED AFFIDAVIT-

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent C. Ryan Matthews, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 02/18/2020

_____
*Judge's signature*

City and state: Miami, Florida

Hon. Chris M. McAliley, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A CRIMINAL COMPLAINT**

I, C. Ryan Matthews, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a criminal complaint charging HECTOR ALEJANDRO CABRERA FUENTES with acting within the United States as an agent of a foreign government without notifying the Attorney General, in violation of 18 U.S.C. § 951, and conspiracy to do the same, in violation of 18 U.S.C. § 371.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been since 2015. Since October of 2017, I have been assigned to the Miami Field Office, Counterintelligence Division, where I investigate offenses including those involving individuals acting on behalf of foreign governments without notifying the Attorney General.

3. I have training in the preparation, presentation, and service of criminal complaints and arrest and search warrants, and have been involved in the investigation of numerous types of offenses against the United States. I have executed arrest warrants and search warrants in previous cases.

4. The facts in this affidavit are based on my personal observations, my training and experience, and information obtained from other witnesses and law enforcement agents. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

**CHARGES**

5. Title 18, United States Code, Section 371 (Conspiracy to commit offense or to defraud United States), makes it a criminal offense for any person to conspire together with one or more others either to commit an offense against the United States or to defraud the United States, or any agency thereof, in any manner or for any purpose.

6. Title 18, United States Code, Section 951 (Agents of foreign governments), makes it a criminal offense for any person, other than a diplomatic or consular officer or attaché, to act in the United States as an agent of a foreign government without prior notification to the Attorney General. For the purposes of this law, the term "agent of a foreign government" includes an individual who agrees to operate within the United States subject to the direction or control of a foreign government or official.

## PROBABLE CAUSE

7. As explained herein, HECTOR ALEJANDRO CABRERA FUENTES stated to Agents of the Federal Bureau of Investigation and Customs and Border Protection that he has been acting within the United States under the direction and control of an individual he (FUENTES) believed to be a Russian Government Official. FUENTES has not notified the Attorney General, as required by law. FUENTES's description of his illegal activity is corroborated by communications that law enforcement viewed on FUENTES's phone, and the description is consistent with the tactics of the Russian intelligence services for spotting, assessing, recruiting, and handling intelligence assets and sources. Thus, for the reasons stated herein, there is probable cause to believe that FUENTES violated 18 U.S.C. § 951 and 18 U.S.C. § 371.

## BACKGROUND OF THE RUSSIAN INTELLIGENCE SERVICES

8. The Russian Intelligence Service (RIS) consists of a collective combination of three civilian and military components: the Foreign Intelligence (SVR) is the agency concerned with the collection of intelligence outside of Russia, and reports directly to the President of Russia; the Main Intelligence Directorate of the General Staff of the Russian Armed Forces (GRU) is the intelligence service of the Russian Armed Forces; and the Federal Security Service (FSB) is the agency responsible for Russia's counterintelligence mission, as well as intelligence gathering in foreign countries. The FSB also reports directly to the President of Russia.

9. Russia's intelligence services are well-funded, aggressive, and politically protected. The RIS is focused, among other things, on influencing the foreign policy of other countries, including the United States, and obtaining highly-sensitive and confidential information from those countries. The RIS also seeks to identify information on foreign intelligence operations directed at Russia, corporate and industrial information that could benefit Russia, and the political, economic, and security policies of other countries that might affect Russia.

10. The RIS and its various components are tasked with conducting clandestine and covert human source operations, of which the United States is the principal target. Human sources are individuals who agree to assist an intelligence service by providing information to that service in response to specific taskings from intelligence officers or agents. RIS human source operations use RIS-trained intelligence officers, as well as non-professional collectors referred to as "co-optees" to recruit, operate, and obtain information.

11. A co-optee is a trusted person used by an intelligence service to provide a layer of obfuscation between the intelligence officer and the source for the purpose of increasing operational security. Co-optees can operate under a variety of covers, including but not limited to: journalists, academics, business professionals, and even posing as diplomats both at home and abroad. Co-optees are tasked with spotting, assessing, targeting, collecting, and handling sources or assets with access to classified, open-source, proprietary, and sensitive information that the Russian Government can use for economic, political, or military decision-making advantage. The RIS often identifies co-optees from academia (students/professors) within institutions of higher learning physically located in Russia.

12. Based on my training and experience, I am aware that RIS officers and agents use various forms of intelligence tradecraft to protect themselves and maintain operational security. Whenever possible, RIS officers choose meeting locations for tasking purposes within Russia.

## RELEVANT PARTIES

13. HECTOR ALEJANDRO CABRERA FUENTES, a citizen of Mexico and an occupational researcher at the National Heart Center in Singapore, entered the United States on a B1/2 (temporary business/tourism) visa on February 13, 2020. Upon arrival at the Miami International Airport on February 13, 2020, FUENTES rented a vehicle from a Miami rental car company. This vehicle was a 2019 Chrysler 300, bearing a Florida license plate (the vehicle). On February 14, 2020, at approximately 04:50 PM, a vehicle matching the description of the vehicle rented by FUENTES was identified by security at a particular condominium complex in Miami-Dade County, Florida. A U.S. Government confidential human source (CHS), who previously provided information regarding RIS activities implicating national security interests of the United States, resides at the above-mentioned condominium complex (CHS Residence). It is believed the vehicle drew attention of security at the CHS Residence because it entered its premises via tailgating another vehicle to gain access. Security at the CHS Residence attempted to locate the Chrysler vehicle. Ultimately, the vehicle was located on the third floor of the parking garage.

14. When a security guard approached the vehicle, FUENTES's travel companion (FEMALE 1), who resides and is legally married to FUENTES in Mexico, was standing next to the passenger-side door. As FUENTES spoke with the security guard, FEMALE 1 walked away from FUENTES's rental car toward the CHS's Vehicle, which was parked in the parking garage of the CHS's Residence. It appeared that FEMALE 1 then walked towards the back of the CHS's Vehicle and took a photograph of the CHS's vehicle's license plate. When security guards at the CHS Residence questioned FUENTES and FEMALE 1 on the nature of their business at the CHS Residence, FUENTES provided a name of an individual whom they were purportedly visiting that security did not recognize as living at the condominium complex. Following this, security told

FUENTES that he had to depart the general premises of the CHS Residence. This interaction between FUENTES and FEMALE 1 and a security guard was captured by surveillance video.

15. On the evening of February 16, 2020, FUENTES and FEMALE 1 arrived at the Miami International Airport to depart the United States en route to Mexico City. While at the airport, FUENTES and FEMALE 1 were inspected by Officers of U.S. Customs and Border Protection (CBP). Under CBP border search authority, CBP conducted a manual search of FEMALE 1's cellular telephone. A review of the phone revealed a close-up image of the license plate of the CHS's Vehicle parked at the CHS's Residence in the "recently deleted folder" of the phone. When asked about the photo, FUENTES admitted tasking FEMALE 1 to take the photo of the CHS's vehicle's license plate. CBP's review of FUENTES's phone revealed a WhatsApp message from FEMALE 1 sent to FUENTES with a photograph identical to the one taken by FEMALE 1 of the CHS Vehicle's license plate.

## CONTACT WITH RUSSIAN OFFICIAL

16. On February 17, 2020, FBI Agents conducted a voluntary interview of FUENTES in the immediate vicinity of the Miami International Airport. During the interview, FUENTES described to the Agents a history of repeated contact in Russia with an individual he (FUENTES) believed worked for the Russian Government (Russian Official).

17. By way of background, FUENTES told Agents that he is currently married to FEMALE 1 in Mexico and another woman (FEMALE 2) in Russia. In March 2019, while FUENTES was in Singapore, FEMALE 2 and her two daughters traveled from Germany to Russia for an administrative matter involving their Russian documents. At the conclusion of the trip, FEMALE 2 attempted to return to Germany; however, Russian customs officials would not allow the family to depart Russia.

18. Subsequently, FUENTES traveled to Russia to see his family in May 2019. On this trip, FUENTES was contacted by the Russian Official. The Russian Official stated he (Russian Official) had met FUENTES previously through professional meetings and exchanges. The Russian Official asked to meet with FUENTES in Moscow.

19. In Moscow, FUENTES recognized the Russian Official through previous interactions in larger group settings at professional exchanges and meetings. This was the first time FUENTES and the Russian Official met alone. During this meeting, FUENTES was told that his (FUENTES's) family should not go to Europe or obtain U.S. visas. Based on those statements and the statements to follow, FUENTES believed that the individual worked for the Russian Government.

20. At a later meeting with the same Russian Official in Moscow in approximately June/July 2019, the Russian Official told FUENTES that he (Russian Official) knew that FUENTES was looking for real estate in the Miami, Florida area. The Russian Official provided a hardcopy printout of FUENTES's historical Gmail account and also told FUENTES that he (Russian Official) knew the name of the realtor that FUENTES was utilizing in Miami to scout real estate. FUENTES told Agents that the Gmail printout was from approximately 2015 when FUENTES was indeed looking for real estate in the Miami area. In the same conversation, the Russian Official brought up FUENTES's family's inability to depart Russia and told FUENTES that "we can help each other."

21. In approximately September 2019, FUENTES met with the Russian Official again in Russia. During this meeting, the Russian Official asked FUENTES to rent a property in Miami, specifically in the condominium complex where the CHS resided. The Russian Official told FUENTES not to rent the apartment in his (FUENTES's) name, and to not tell his Russian family about their meetings.

22. In response to this request by the Russian Official, in November 2019, FUENTES asked an associate (Associate) to rent an apartment under his (Associate's) name, specifically in the same condominium complex as the CHS Residence. The Associate agreed to rent the apartment.

23. In December 2019, FUENTES's Associate made final arrangements to rent the condominium. FUENTES transferred approximately $20,000 USD to the Associate as a down payment and rent.

24. Also in December 2019, FUENTES met with the Russian Official again in Moscow. FUENTES informed the Russian Official that he (FUENTES) had procured a condo at the CHS Residence. The Russian Official approved and told FUENTES that he (Russian Official) would see FUENTES the next time FUENTES was in Moscow.

25. In February 2020, FUENTES traveled to Moscow and met again with the Russian Official. Such travel is corroborated by Russian entrance found in FUENTES's passport. In this meeting, the Russian Official tasked FUENTES with locating the CHS's vehicle in the parking garage of the CHSs Residence. The Russian Official provided FUENTES with a physical description of the CHS's vehicle and told FUENTES to locate the vehicle in the CHS's Residence parking lot, obtain the CHS's vehicle's license plate number, and note the physical location of the CHS's vehicle. Additionally, FUENTES was instructed to not take any pictures of the vehicle, and simply note the above requested information. Nevertheless, FUENTES admitted that once he identified the CHS's vehicle, he directed FEMALE 1 to take a picture out of convenience. FUENTES told Agents that the Russian Official had instructed FUENTES to meet the Russian Official in April or May 2020 to inform him of the results of the search for the CHS's vehicle.

26. FUENTES identified conversations stored on his cellular phone with the Russian Official, which corroborated in-person meetings between FUENTES and the Russian Official.

7

These messages showed the meetings were initiated and directed by the Russian Official. In addition, FUENTES stated that he believed the Russian Official worked for the FSB.

## **CONCLUSION**

27. For all the reasons stated above, there is probable cause to believe that from on or about March 2019 through on or about February of 2020, FUENTES acted on behalf of a foreign government without notifying the Attorney General, in violation of 18 U.S.C. § 951, and conspired to do the same, in violation of 18 U.S.C. § 371.

28. I declare under the penalty of perjury that the information provided above is true and correct.

Respectfully submitted,

C. Ryan Matthews
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
on February 18, 2020.

THE HONORABLE CHRIS M. McALILEY
UNITED STATES MAGISTRATE JUDGE

8